IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:05-CV-0063-L |
| SCOTT B. GANN and GEORGE B. FASCIANO, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants Scott B. Gann's and George Fasciano's Motion to Dismiss

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and Brief in Support, filed June 9,

2005.  After careful consideration of the motion, response, reply and applicable authority, the court

**denies in part** and **grants in part** Defendants Scott B. Gann's and George Fasciano's Motion to

Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## I.     Procedural and Factual Background

On January 10, 2005, the Securities Exchange Commission (the "Commission") filed this

action against Defendants Scott B. Gann ("Gann") and George Fasciano ("Fasciano") (collectively

referred to as "Defendants"), alleging that they violated, and aided and abetted violations of, Section

10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, in connection with their market

timing practices.  The Commission seeks both the imposition of civil monetary penalties pursuant

to section 21(d)(3) of the Exchange Act (15 U.S.C. § 78u(d)(3)), as well as equitable relief,

including entry of a permanent injunction prohibiting Defendants from directly or indirectly

engaging in violations of, or aiding and abetting violations of, § 10(b) of the Exchange Act and Rule

10b-5, and disgorgement of ill-gotten gains from their allegedly unlawful conduct, with prejudgment

interest.  As set forth in the next section, for purposes of a motion to dismiss, the court assumes all

well-pleaded facts in the complaint to be true.

　　　　Defendants Gann and Fasciano were employed for several years as securities brokers at the

Dallas branch office of Southwest Securities, Inc. ("Southwest"), a registered broker-dealer and

investment adviser, until Southwest terminated them in or around April 2004.[1]  As securities brokers

for Southwest, Defendants assisted clients in brokerage transactions, including the purchase and sale

of mutual funds.  The complaint alleges that between February 2003 and September 2003,

Defendants executed approximately 2,000 market timing trades in approximately 56 mutual fund

families (representing approximately 165 total mutual funds) in an aggregate amount of at least $650

million on behalf of a hedge fund adviser based in New York ("Hedge Fund").  Of this amount,

Southwest earned approximately $257,349 in fees of which Defendants received approximately

$112,871.  The complaint alleges that during this process, Defendants violated securities laws by

defrauding these mutual funds.

　　　　As alleged in the complaint, market timing refers to the practice of short term buying and

selling of mutual fund shares in order to exploit inefficiencies in mutual fund pricing.  Market

timing, while not illegal *per se*, can adversely affect mutual fund shareholders because profits that

a market timer takes can dilute the value of shares held by long-term shareholders.  In addition, the

---

[1]As pointed out by the Securities Exchange Commission, Southwest recently settled failure to supervise charges relating to Gann's and Fasciano's conduct for $10 million. Southwest's President and CEO, Daniel R. Leland, along with two other officers, also agreed to pay civil monetary penalties arising from the failure to supervise charges brought against them.  *See In the Matter of Southwest Securities, Inc., Daniel R. Leland, Kerry M. Rigdon, and Kevin J. Marsh*, Exchange Act of 1934 Release No. 51002 (January 10, 2005), *reprinted at* 2005 WL 43963.

**Memorandum Opinion and Order – Page 2**

frequent in-and-out trading associated with market timing activity disrupts portfolio management, increases trading costs (which all shareholders bear), and may cause the mutual fund to realize capital gains at inopportune times. As a consequence, many mutual funds are averse to market timing trading and typically prohibit market timing or impose strict limitations on the frequency of trades in order to limit market timing trading. Mutual funds suspecting brokers of market timing trading send out "block notices" which set forth restrictions on market timing trading, including prohibiting future trades in specific blocked accounts, prohibiting trades by a particular broker, or prohibiting future trades bearing a particular branch office identification number.

Southwest maintained dealer agreements with various fund companies which, along with the fund prospectus and statement of additional information, set forth the terms and conditions regarding the purchase and sale of mutual funds. Defendants were aware that mutual fund companies deemed market timing to be improper and unacceptable.

In or around November 2002, representatives of Hedge Fund contacted Defendants about opening accounts at Southwest for the express purpose of executing market timing trades. At that time, Hedge Fund responded to a written questionnaire from Defendants that asked: "What strategies have you enacted to avoid being shut down [by the mutual funds] in the future?" Compl. ¶ 16. Hedge Fund responded: "Having more than one number with a [registered representative]. Rotating accounts and more than one [registered representative] number with multiple accounts." *Id.* Defendants received a copy of this response to their questionnaire.

In January 2003, Defendants began opening trading accounts for Hedge Fund. On February 10, 2003, Hedge Fund placed its first trade through Defendants. Fifteen days later, Southwest received a block notice from SEI Funds relating to Hedge Fund's market timing trading. Defendants

were aware of the block notice.   Between February 2003 and September 2003, at least thirty-four mutual fund families detected Defendants' market timing activities and sent block notices prohibiting further market timing trading.  *See id.* ¶ 19 (listing sixty-eight block notices).  Gann and Fasciano were aware of the block notices and kept records tracking the mutual funds that restricted or prohibited Hedge Fund or Defendants from trading in those funds' shares.  Defendants shared these records with Hedge Fund to coordinate the fraudulent scheme.

The complaint further alleges that despite knowing of the block notices, Defendants continued the market timing trading, and schemed to evade the restrictions imposed by the mutual funds by disguising Hedge Fund's purchases and sales of mutual fund shares by, among other things: (i) concealing their own identities and the identity of Hedge Fund; (ii) creating multiple accounts for Hedge Fund and using several broker identification numbers to process market timing trades; (iii) dividing trades into amounts designed to evade detection; and (iv) using different branch identification numbers to disguise their trading activity.  *See id.* ¶¶ 2, 22-42.  By masking themselves and Hedge Fund, Defendants circumvented the block notices and continued to execute market timing trades in mutual funds that had previously restricted Defendants' trading.  Not knowing the true identity of Defendants or Hedge Fund, the mutual fund companies processed transactions they otherwise would have rejected.

The matter is before the court on Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).  After setting forth the applicable legal standard for pleading securities fraud violations, the court will address Defendants' grounds for dismissal.

**Memorandum Opinion and Order – Page 4**

## II.      Discussion

### A.      Fed. R. Civ. P. 12(b)(6) Standard

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247.  A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

### B.       The Particularity Requirements of Rule 9(b) and Scienter

In pleading a securities fraud violation, a plaintiff must satisfy the requirements of Fed. R.

Civ. P. 9(b), which provides that:

> In all averments of fraud or mistake, the circumstances constituting
> fraud or mistake shall be stated with particularity.  Malice, intent,
> knowledge, and other condition of mind of a person may be averred
> generally.

Rule 9(b) requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent,

identify the speaker, state when and where the statements were made, and explain why the

statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.,* 302 F.3d 552, 564-65

(5th Cir. 2002) (quotations omitted).  A dismissal for failure to satisfy the requirements of Rule 9(b)

is a dismissal on the pleadings for failure to state a claim pursuant to Rule 12(b)(6).  *U.S. Ex. Rel.*

*Russell v. Epic Healthcare Mgmt. Group,* 193 F.3d 304, 308 (5th Cir. 1999) (citing *Shushany v.*

*Allwaste, Inc.* 922 F.2d 517, 520 (5th Cir. 1993)).

A plaintiff pleading a securities fraud violation must also adequately allege scienter which,

in relation to securities fraud, is "the intent to deceive, manipulate, or defraud." *Ernst & Ernst v.*

*Hochfelder,* 425 U.S. 185, 193-94 (1976); *Mercury Air Group, Inc. v. Mansour,* 237 F.3d 542, 546

(5th Cir. 2001); *Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1490 (5th Cir. 1997).  Scienter may

be satisfied by proof that the defendant acted with severe recklessness.  *See Shushany*, 992 F.2d at

521.  Strict intentional misconduct is not necessary; it is sufficient to prove that the conduct in

question is an "extreme departure from the ordinary standards of care." *Trust Co. of La.*, 104 F.3d

at 1490.  "To plead scienter adequately, a plaintiff must set forth specific facts that support an

inference of fraud." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).

Under *Tuchman*:

**Memorandum Opinion and Order – Page 6**

> The factual background adequate for an inference of fraudulent intent can be satisfied by alleging facts that show a defendant's motive to commit securities fraud. Where a defendant's motive is not apparent, a plaintiff may adequately plead scienter by identifying circumstances that indicate conscious behavior on the part of the defendant, though the strength of the circumstantial allegations must be correspondingly greater.

*Id.*

### C.     Analysis

Defendants have moved to dismiss: (i) the Commission's claims that they violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in connection with their allegedly deceptive market timing practices; and (ii) the Commission's claims that they aided and abetted Hedge Fund in uncharged violations of the securities laws. The court will consider these arguments in turn.

### 1.     Violations of Section 10(b) of the Exchange Act and Rule 10b-5

Defendants move to dismiss the Commission's claims that they violated Section 10(b) of the Exchange Act and Rule 10b-5 in connection with their deceptive market timing practices. In support of their motion, Defendants contend that the Commission has failed to plead with particularity the circumstances constituting the alleged fraud as required under Fed. R. Civ. P. 9(b), and has failed to allege the requisite scienter. In response to the motion to dismiss, the Commission contends it has more than adequately satisfied the pleading requirements of Rule 9(b) and pleaded the requisite scienter. The court agrees.

In pertinent part, § 10(b) of the Exchange Act, as amended, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange –

\* \* \*

> (b) To use or employ, in connection with the purchase
> or sale of any security registered on a national
> securities exchange or any security not so registered,
> . . . any manipulative or deceptive device or
> contrivance in contravention of such rules and
> regulations as the [Securities and Exchange]
> Commission may prescribe as necessary or
> appropriate in the public interest or for the protection
> of investors.

15 U.S.C. § 78(j)(b) (1934) (amended 2000).  Pursuant to its § 10(b) rulemaking authority, the SEC

has adopted Rule 10b-5 which, in relevant part, provides:

> It shall be unlawful for any person, directly or indirectly, by the use
> of any means or instrumentality of interstate commerce, or of the
> mails or of any facility of any national securities exchange,
>
> > (a) To employ any device, scheme, or artifice to defraud;
> >
> > (b) To make any untrue statement of material fact or
> > to omit to state a material fact necessary in order to
> > make the statements made, in light of the
> > circumstances under which they were made, not
> > misleading, or;
> >
> > (c) To engage in any act, practice, or course of business
> > which operates or would operate as a fraud or deceit upon any
> > person, in connection with the purchase or sale of any
> > security.

17 CFR § 240.10b-5 (1996).

### a.        Rule 9(b)

First, the court rejects Defendants' argument that the Commission has failed to meet the

particularity requirements under Rule 9(b).  The court determines that the complaint contains the

"who, what, where, when and how" allegations generally required in securities fraud cases.  *See*

*Herrmann Holdings,* 302 F.3d at 564-65. The complaint identifies in detail the nature of Defendants'

**Memorandum Opinion and Order – Page 8**

allegedly fraudulent scheme and states that from February 2003 to September 2003, Defendants

participated in a fraudulent scheme by engaging in deceptive activities designed to circumvent

trading restrictions on market timing imposed by various mutual funds. *See* Compl. ¶¶ 1-2. The

complaint identifies the specific dates and transactions where, after receiving block notices,

Defendants continued to engage in market timing trading by "masking" themselves through use of

multiple accounts (*id.* ¶¶ 22, 24, 26-28), multiple registered representative numbers (*id.* ¶¶ 30-32),

and dividing trades into smaller dollar amounts. *See id.* ¶¶ 36-38. Each of these allegedly deceptive

practices is supported by specific examples and detailed charts. As to each block notice, the

Commission provides the date of the notice, the fund giving the notice, and the account number for

each blocked account. Finally, the Commission alleges that these practices were for an improper

fraudulent purpose, that is, to avoid detection by the mutual funds thereby continuing to engage in

market timing on behalf of their client Hedge Fund. In short, the court has no trouble concluding that

the Commission has met the relevant pleading requirements under Rule 9(b).

### b.      Scienter

Further, the court determines that the Commission has adequately pleaded scienter.

Specifically, the Commission has alleged facts that show Defendants' motive to commit securities

fraud, namely, to get around the block notices sent out by the mutual funds. Even if the Commission

had not adequately alleged motive, it has alleged more than enough specific facts to support an

inference of scienter under *Tuchman*. Once again, the complaint alleges that, after receiving the

block notices, Defendants used multiple accounts (*see* Compl. ¶¶ 22, 24, 26-28) and multiple

registered representative numbers (*id.* ¶¶ 30-32), and divided trades into smaller dollar amounts to

avoid the block notices and continue trading for Hedge Fund. *See id.* ¶¶ 36-38.

In addition, the complaint alleges three highly specific communications between Defendants and Hedge Fund wherein Defendants and Hedge Fund discuss the purpose for Defendants' use of multiple accounts and registered representative numbers and branch office codes, along with the reason for dividing trades into smaller amounts. *See id.* ¶¶ 15, 16, 35, 39, 40-42. From these allegations, the court can infer that Defendants engaged in the allegedly fraudulent market timing scheme knowingly and consciously or, at a minimum, with severe recklessness. In short, the allegations in the complaint are sufficient to meet the scienter requirement in the Fifth Circuit and provide strong circumstantial evidence of conscious behavior, if not conscious behavior itself. *Shushany*, 992 F.2d at 521; *Trust Co. of La.*, 104 F.3d at 1490; *Tuchman*, 14 F.3d at 1068.

Having reviewed the allegations in the complaint, the court rejects Defendants' argument that the Commission's complaint should be dismissed for failure to plead with particularity the circumstances constituting the alleged fraud, as required under Fed. R. Civ. P. 9(b), and for failure to allege the requisite scienter. Accordingly, Defendants' motion to dismiss on these grounds should be denied.

### c.      Rule 12(b)(6)

In support of their motion to dismiss, Defendants argue that market timing is not *per se* illegal. In opposition, the Commission contends that while market timing is not *per se* illegal, Defendants' acts and omissions set forth in the complaint with respect to the market timing scheme amount to fraudulent misrepresentations prohibited by the antifraud securities laws. Further, the Commission states: "Just as trading securities is not inherently illegal, individuals can commit fraud in the purchases and sale of securities by engaging in deceptive practices such as insider trading and market manipulation." Resp. at 5 n.2. The court agrees.

**Memorandum Opinion and Order – Page 10**

In support of its argument that market timing practices such as those alleged in its complaint may give rise to violations of the federal securities laws, the Commission relies on a case recently decided by another district court in which similar allegations of market timing withstood a motion to dismiss by securities broker. *See* Resp. at 1 n.1 (citing *SEC v. Druffner*, 353 F. Supp. 2d 141 (D. Mass. 2005)). In *Druffner*, the court rejected arguments similar to those Defendants make herein, finding that market timing practices akin to those alleged in this case may violate the antifraud provisions of the federal securities laws. *Id.* at 148-49 (denying brokers' motion to dismiss claims for securities fraud where brokers engaged in market timing trading using multiple fictitious financial advisor numbers and customer account numbers to disguise clients' purchases and sales of mutual fund shares and to place trades even after certain clients had been blocked from future trading due to market timing activities). In further support, the Commission also attaches a slip opinion from a district court in the Central District of California, similarly denying a motion to dismiss where the Commission alleged that "cloning" of account numbers to circumvent mutual funds efforts to prevent market timing practices sufficiently alleged a deceptive device, scheme, artifice or practice in violation of Rule 10b-5(a)-(c). *See* Exhibit 1 to Resp. (*SEC v. JB Oxford Holdings, Inc.*, No. CV-04-07084, slip op. at 8-9, Nov. 10, 2004). Finally, the Commission points out that the antifraud provisions have been characterized by the Supreme Court as "catch-all provisions," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 202-03 (1976), that are "designed to prevent fraudulent practices." *Chiarella v. United States*, 445 U.S. 222, 226 (1980). *See also Superintendent of Ins. of State of New York v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12 (1971) ("[s]ince practices constantly vary and where practices legitimate for some purposes may be turned to illegitimate and

fraudulent means, broad discretionary powers in the regulatory agency have been found practically essential. . . . Section 10(b) must be read flexibly, not technically and restrictively.").  *See* Resp. at 3 n.5.

In their Reply, Defendants argue that *Druffner* should be disregarded by this court since the Fifth Circuit and the First Circuit have different requirements for pleading scienter and since, in any event, the allegations in *Druffner* are not comparable to those made by the Commission in this case. *See* Reply at 2-4.  Defendants also contend that the court should disregard the slip opinion in *JB Oxford Holdings, Inc*., since the attached slip opinion does not constitute authority, as it is unpublished, and as it is only minutes that are not available to the public either in hard form or electronically.

The court, of course, fully realizes that *Druffner* and *JB Oxford Holdings, Inc.* are not binding on it, as they are opinions from district courts in other circuits.  Irrespective of the district courts' decisions in *Druffner* and *JB Oxford Holdings, Inc.*, this court reaches the same result in this case.  Given the plain language and purpose of Section 10(b) of the Exchange Act and Rule 10b-5, namely, to prevent fraudulent practices (*see Ernst & Ernst*, 425 U.S. at 202-03; *Chiarella*, 445 U.S. at 226), along with the need to read Section 10(b) "flexibly, not technically and restrictively[,]" (*see Bankers Life & Casualty Co.*, 404 U.S. at 12), a fair reading of the Commission's allegations in this case necessarily leads to the decision reached by the court.[2]

_____

[2]Although the court is not relying on the *Druffner* decision as precedent, the court notes that the pleading requirements under Rule 9(b) applied by the *Druffner* court and courts in the Fifth Circuit are virtually identical. *Compare Herrmann Holdings*, 302 F.3d at 564-65 (Rule 9(b) requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent") *with Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1ˢᵗ Cir. 1997) (To satisfy Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.") (citation omitted). Further, the court rejects Defendants' argument that the cases are not similar.  Both cases involve securities brokers allegedly concealing their identity for the allegedly improper purpose of disguising the buying and selling of mutual fund

**Memorandum Opinion and Order – Page 12**

In short, Defendants' motion to dismiss for failure to state a claim should be denied.  That

market timing is not *per se* illegal is not germane; rather, the relevant inquiry is whether, while

practicing market timing, Defendants committed fraud by engaging in deceptive practices in

violation of the securities laws.  After considering the allegations pertaining to Defendants' market

timing practices, and viewing all facts in the light most favorable to the Commission, the court

determines that market timing practices such as those alleged in this case may violate § 10(b) and

Rule 10(b)-5.  Defendants' motion to dismiss for failure to state a claim should therefore be denied.

### 2.      Aiding and Abetting Liability

Defendants have moved to dismiss the Commission's claims that they aided and abetted

Hedge Fund in uncharged violations of the securities laws.  In support, Defendants argue that the

Commission has failed to allege a primary violation of the securities laws, and thus cannot prevail

on a claim for aiding and abetting.   In response, the Commission contends that it has adequately

pleaded a primary violation of the securities laws, and Defendants' motion should be denied.  The

court agrees with Defendants.

To establish a claim for aiding and abetting a § 10(b) and Rule 10(b)-5 violation, a complaint

must sufficiently allege, "the existence of the predicate Section 10(b) violation by the primary party,

knowledge of the violation by these defendants and 'substantial assistance' by these defendants in

aiding and abetting the violation."  *See Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 508 (5th Cir.

---

shares using market timing practices.  That the *Druffner* defendants realized higher profits from their alleged scheme
or used a greater number of fictitious financial advisor numbers and received more block notices than Defendants herein
is a "distinction without a difference."  The underlying conduct alleged to violate the securities laws is sufficiently
similar. Finally, while Defendants are correct that the slip opinion in *JB Oxford Holdings, Inc.* is not binding authority
on this court, as it is an unpublished minute order from another district court, the court is certainly not prevented from
considering it.

**Memorandum Opinion and Order – Page 13**

1990) (quoting *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir. 1975)).  Thus, before

the Commission can hold Defendants liable for aiding and abetting, the Commission must

sufficiently plead a primary violation by Defendants' clients, in this case, Hedge Fund.  *Dennis*, 918

F.2d at 508.  Having considered the applicable pleading requirements for alleging a securities fraud

violation, including Rule 9(b) and the need to adequately allege scienter (*see supra*), the court

determines that the Commission's allegations fail to sufficiently state a claim as to aiding and

abetting.  Accordingly, the Commission's claims that Defendants aided and abetted Hedge Fund in

uncharged violations of the securities laws should be granted.

## III.     Conclusion

For the reasons stated herein, and assuming all facts alleged in the Commission's complaint

to be true and resolving every doubt in the Commission's favor (*see Lowrey*, 117 F.3d at 247), the

court **denies in part** and **grants in part** Defendants Scott B. Gann's and George Fasciano's Motion

to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  The court **denies**

Defendants' motion to dismiss with regard to the Commission's claims that Defendants violated

securities fraud laws in connection with their market timing practices.  The court **grants** Defendants'

motion to dismiss with regard to the Commission's claims that Defendants aided and abetted Hedge

Fund in uncharged violations of the securities fraud laws.

**It is so ordered** this 13th day of March, 2006.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 14**